UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EDWARD WILSON,               :           NO. 1:04-CV-00819
                             :
        Plaintiff,           :
                             :
    v.                       :           **OPINION AND ORDER**
                             :
EXECUTIVE JET MANAGEMENT,    :
         INC.,               :
                             :
        Defendant.           :


This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 16), Plaintiff's Response in Opposition (doc. 20), and Defendant's Reply (doc. 26).  Also before the Court is Defendant's Motion to Strike Affidavit of Michael C. Welch, M.D. (doc. 27), Plaintiff's Memorandum in Opposition (doc. 28), and Defendant's Reply (doc. 29).  For the reasons indicated herein, the Court DENIES both of Defendant's motions.

**I.  BACKGROUND**

Plaintiff Edward Wilson worked for Defendant from June 17, 2002, until March 31, 2004, as a parts specialist (doc. 1). Before he started working for Defendant, Wilson had knee surgery, after which his doctor informed him he would be freely mobile in about six weeks (Id.).  However, Plantiff's knee became infected such that Plaintiff continued to need crutches (Id.).  According

to Plaintiff, his supervisor, Richard Volzke, allegedly repeatedly told Plaintiff to "lose the crutches," indicated he did not like Plaintiff "gimping around," and stated that Richard Williams, the vice president of operations, was unhappy about Plaintiff's use of crutches (Id.). Plaintiff was scheduled for surgery in July 2003 to eliminate his knee infection, and informed Volzke in March 2003 (Id.). A parts inspector, Andrew White, who worked in the same area as Plaintiff, testifies that from the time of Plaintiff's announcement that he required additional surgery, he heard Volzke, Williams, and a manager, Jim Lewis, comment at various times that Plaintiff would not be returning to work after his surgery (doc. 20). White understood these comments to mean that management had already decided Plaintiff would not be permitted to return to work after the upcoming surgery (Id.). Plaintiff avers that his job performance was satisfactory, as evidenced by a positive evaluation in June 2003, but that he was not given a raise, as allegedly promised, for satisfactory job performance (doc. 1). Plaintiff avers he performed all the functions of his job even with crutches and while self-administering strong antibiotics (Id.).

Plaintiff underwent the surgery in July 2003 and states he was ready to return to work in August 2003, again with crutches, but, according to Plaintiff, Volzke told him he had to

2

be "one hundred percent," and he could not return with crutches
(doc. 20).  Plaintiff remained off work, and underwent another
knee-replacement surgery in October 2003 (Id.).  Plaintiff
alleges he could have returned to work in December 2003, but that
Volzke had indicated Plaintiff must be "one hundred percent"
(Id.).

In January 2004, Plaintiff's short-term disability ran
out, so he states that because he was not permitted to return to
work, he applied for long-term disability (Id.).  Plaintiff
alleges that during his absence, Volzke had moved a stock clerk,
Shane McCann, to cover Plaintiff's parts specialist position
(Id.).  According to Plaintiff, when Plaintiff applied for long-
term disability, Volzke made McCann's transfer to Plaintiff's job
permanent, assuming Plaintiff would never return (Id.).
Defendant offers a different view, stating that McCann was
shifted to Wilson's shift to help Plaintiff because Plaintiff
could not do his job, an assertion Plaintiff squarely denies
(Id.).

In March 2004, Plaintiff's application for long-term
disability was denied because his knee problem was deemed a pre-
existing condition (Id.).  Plaintiff called Defendant's human
resources department and again attempted to return to work (Id.).
He states that Darlene Wolke, an assistant in the department,

3

told him he had to have a release without restrictions (Id.).

Plaintiff then saw his doctor and obtained such a release, which

did not indicate Plaintiff still needed a crutch or a cane,

although Plaintiff did indeed still need support to walk (Id.).

Plaintiff avers next that Defendant's human resources

manager, Cynthia Brusman, called him after receiving the release,

but told him Defendant had no positions available, and confirmed

there were no positions for crutches or canes (Id.). Plaintiff

disputes Defendant's assertion that Brusman told him about

vacancies in the company (Id.).

On March 31, 2004, Brusman sent Plaintiff a letter

indicating his eligibility for health insurance terminated as of

that date, and also indicating there were no positions available

in the parts department (Id.). Plaintiff again contests

Brusman's assertion, and argues there were positions open because

Andrew White had been terminated in August 2003, and McCann's

stock clerk position had not been filled (Id.).

Plaintiff filed his Complaint on December 7, 2004,

alleging Defendant violated federal and Ohio state disability law

by refusing to accommodate his need for crutches and by

terminating his employment (doc. 1). On November 1, 2005,

Defendant filed the present Motion for Summary Judgment (doc.

16). Defendant argues that Plaintiff cannot establish a prima

4

facie case of disability under federal or state law, that there are no genuine issues of material fact for trial, and so it is entitled to summary judgment (Id.). On November 28, 2005, Plaintiff filed his Response in Opposition to Defendant's Motion, arguing there are significant material issues of fact in dispute, that Plaintiff had a significant impairment during his employment and remains permanently impaired today (doc. 20). Defendant filed its Reply (doc. 26), so this matter is ripe for the Court's review.

## II. SUMMARY JUDGMENT STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or

5

whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

  The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

  Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial,

even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits.  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough

7

specificity that the district court can readily identify the facts upon which the non-moving party relies." <u>Guarino</u>, 980 F.2d at 405, <u>quoting</u> <u>Inter-Royal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. <u>See</u> <u>McDonald v. Union Camp Corp.</u>, 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. <u>See</u> <u>Adams v. Metiva</u>, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. <u>See</u> <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III.  ANALYSIS

### A.  Applicable Law

The Americans with Disabilities Act ("ADA") was enacted to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment."  42 U.S.C. § 12112(a).  In order to establish a prima facie case of disability discrimination, a plaintiff must show that (1) he is "disabled" as contemplated by the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodations for his disability; and (3) he suffered an adverse employment decision as a result of this disability. See, e.g., Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2003); Monette v. Electronic Data Sys. Corp., 90 F.3d at 1178.  Should Plaintiff fail to establish a factual dispute as to any one of these elements of his prima facie case, summary judgment would be warranted in Defendant's favor.  Monette, 90 F.3d at 1185-86 ("If the plaintiff fails to establish a predicate fact necessary to create the presumption of unlawful intent,...the 'burden' never shifts to the defendant.").  Merely having a physical or mental

9

impairment does not render one disabled under the ADA. <u>MX Group, Inc. V. City of Covington</u>, 293 F.3d 326, 337 (6th Cir. 2002). Rather, the Act defines a disability as any of the following:

>    (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

>    (B) a record of such an impairment; or

>    (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). "'Major' in the phrase 'major life activities' means important...and thus refers to those activities that are of central importance to daily life;" the accompanying regulations and interpreting federal courts have determined that the term includes performing manual tasks, caring for oneself, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. 1630.2(i). The question of whether a Plaintiff is regarded as having such an impairment, under the third prong of the statute, ordinarily is not one to be decided on summary judgment, as it involves a determination of state of mind that is more appropriate for the jury than for the judge. <u>Ross v. Campbell Soup Co.</u>, 237 F. 3d 701, 709 (6th Cir. 2001).

       Once a Plaintiff establishes a <u>prima facie</u> case of disability discrimination, Defendant must offer a legitimate nondiscriminatory reason for its adverse action. If the employer satisfies this burden, then Plaintiff must produce evidence

showing the proffered explanation is pretextual. <u>Hendrick v.</u> <u>Western Reserve Care System</u>, 355 F.3d 444, 452-453 (6th Cir. 2004). The same standards applicable to Plaintiff's ADA claim apply to his claims under Ohio disability law, O.R.C. § 4112.02(A). <u>City of Columbus Civil Serv. Commission v. McGlone</u>, 82 Ohio St.3d 569 (1998).

### B. Defendant's Motion for Summary Judgment

Defendant argues that Plaintiff has failed to establish the first and third prongs of a <u>prima</u> <u>facie</u> case for a disability claim, that is, it argues Plaintiff is not disabled under the meaning of the law, and that Plaintiff was not subject to an adverse employment decision solely because of his disability (doc. 16, citing <u>Johnson v. City of Mason</u>, 101 F. Supp. 2d 566, 573 (S.D. Ohio, 2000).

### 1. Defendant argues Plaintiff is Not Disabled

As for its first contention, Defendant argues that Plaintiff does not have an impairment that substantially impairs him in the major life activity of walking (<u>Id</u>. <u>citing</u> 29 C.F.R. § 1630.2(j)(1)). Defendant states courts should consider the nature, severity, and duration of the impairment in determining whether an individual is substantially limited in a major life activity (<u>Id</u>. <u>citing</u> 29 C.F.R. 1630.2(j)(2)). Here, Defendant argues that Plaintiff's impairment is a prosthetic knee that does

not keep him from walking, with or without a cane (Id.). Defendant cites Plaintiff's deposition testimony, where Plaintiff indicated he is able to walk for 15 minutes or the equivalent of three and a half city blocks without a cane (Id.). Defendant further cites the same deposition to show that Plaintiff engages in a host of exercises, including riding a stationary bike for fifteen minutes, that he learned in physical therapy (Id.). Defendant argues the record shows the only time Plaintiff needs to use a cane is when he is tired or his knee hurts, and any such knee pain is mild and can be treated with an occasional Tylenol (Id.). Defendant further argues that Plaintiff testified he could perform any task that other employees in the parts department performed (Id.). For these reasons, Defendant argues Plaintiff's impairment is minor, at best (Id.).

Defendant argues that the surgeries Plaintiff received ultimately were successful and argues there is a lack in the record of medical restrictions, as Plaintiff received a full medical release from Dr. Welch on March 19, 2004, allowing him to return to work without any restrictions whatsoever (Id.). Next, Defendant argues that Plaintiff's alleged limitations on his ability to walk do not amount to a substantial limitation on his ability to walk, work, or lift (Id. citing Brown v. BKW Drywall Supply, Inc., 305 F.Supp. 2d 814, 825-26 (S.D. Ohio 2004), Penny

12

v. United Parcel Service, 128 F.3d 408, 414 (6th Cir. 1997),
Martin v. Licking County Common Pleas Court Juvenile Division,
2005 U.S. Dist. LEXIS 9013 *15-16 (S.D. Ohio April 25, 2005), and
Sutton v. United Airlines, Inc., 527 U.S. 471 (1999)(for the
proposition that a person whose physical impairment is corrected
by mitigating measures is not disabled)). Defendant emphasizes
that in the Sixth Circuit, a physical condition is not considered
a substantial impairment "unless it places an individual so far
outside the norm as to make it impossible or unusually difficult
for that individual to perform work that could be done by most
other people." (Id. citing Szalay v. Yellow Freight Sys. Inc.,
988 F. Supp. 799, 802 (N.D. Ohio 1996).

As its second theory in support of its argument that
Plaintiff is not disabled, Defendant argues that Plaintiff does
not have a record of a disability nor did Defendant regard him as
disabled (Id.). Defendant argues Plaintiff's personnel file is
nearly devoid of documents pertaining to his knee condition, and
the only document relied upon by Defendant was Dr. Welch's
medical release completed by Dr. Welch, permitting Plaintiff to
return to work with absolutely no restrictions (Id.).

Finally, Defendant argues that there is no record
evidence that it perceived Plaintiff as unable to work in a broad
class of jobs when he sought to return to work (Id.). Defendant

13

argues, again relying on Dr. Welch's full medical release, that it could not have perceived Wilson as disabled given it had no notice of a disability (Id.). Defendant argues that should Plaintiff argue that he was not permitted to return to work while still using a cane, such argument should be rejected, because Plaintiff failed to follow company procedure and present Defendant with a return-to-work slip from his doctor, allowing him to work with or without restrictions (Id.). Defendant argues that from the outset, Plaintiff represented that his knee condition was temporary, and there is no record evidence tending to show it disbelieved Plaintiff and considered him permanently disabled (Id.).

Defendant next argues that there is no evidence that it believed Plaintiff could not walk, lift, or work in the parts specialist position, but its concern was rather "whether it was safe for Wilson to do so while using a cane" (Id.). Defendant argues the requirement that Plaintiff return to work without restrictions is not evidence that Plaintiff was regarded as disabled, citing Maloney v. Barberton Citizen's Hospital, 109 Ohio App. 3d 372, 378, 672 N.E. 2d 223, 227 (Ohio App. 1996)(requirement that plaintiff return to work without restrictions "is not evidence that defendant regarded her as having an impairment that substantially limited a major life

14

activity.  At most defendant regarded plaintiff as having a minor injury that temporarily interfered with her ability to perform all the functions of a licenced practical nurse, including lifting and turning patients")(Id.).

Defendant further argues that Plaintiff cannot point to any evidence during the time he served as a parts specialist that would show he was perceived to be disabled (Id.).  Defendant argues Plaintiff was not treated differently from other parts specialists, his duties were not changed in any manner, his hours of work, salary and benefits, and work location were not changed (Id.).

Finally, Defendant argues, when Plaintiff presented a full medical release to return to work in March 2004, the evidence shows Plaintiff was informed of other job openings, but that he did not show interest in other such positions (Id.). Defendant argues that had it viewed Plaintiff as disabled, it would not have looked for vacancies or advise him of openings in other departments (Id.).

### 2.  Defendant Argues Plaintiff Suffered No Adverse Employment Decision

Defendant argues that if it intended to discriminate against Plaintiff for any disability, it would neither have hired him in the first place, nor approved his use of crutches in the

parts specialist position (doc. 16).  Defendant argues it made efforts to accommodate Plaintiff's difficulty in standing by providing him with a stool, and transferring Shane McCann to the fourth shift to assist Plaintiff, after employees complained Plaintiff could not perform lifting required by his job (Id.). Defendant contends the record shows it granted Plaintiff short-term disability, which it funded, and had it been intent on discriminating against Plaintiff, it would not have done so (Id.).  Defendant explains that upon the expiration of the 26-week short-term disability leave period, Plaintiff applied for long-term disability benefits (Id.).  When Volzke heard this news, Defendant argues, he logically assumed Plaintiff would not be returning to work, and replaced him (Id.).

Defendant argues there is no evidence in the record that Plaintiff ever contacted Defendant prior to January 12, 2004, the end of his short-term disability leave period, so as to advise it he intended to return to work at the end of such period (Id.).  Defendant argues that had it intended to discriminate against Plaintiff, it would have transferred McCann into Plaintiff's position in July 2003, rather than waiting for Plaintiff to file for long-term disability benefits (Id.). Defendant argues that Plaintiff can speculate that other positions were open in the parts department, but that this simply

16

was not the case (Id.).  Defendant argues that it defies logic
for Plaintiff to claim he was subject to disability
discrimination when he never contacted the human resources office
to inquire about vacant positions offered by Brusman (Id.).

### C.  **Plaintiff's Response**

Plaintiff begins his Response by reciting a number of
facts he argues Defendant omitted from its Motion (doc. 20).
First, Plaintiff proffers his affidavit and deposition testimony
indicating that Volzke made derogatory comments about Plaintiff's
condition from the outset of his employment, including that
Plaintiff should "lose the crutches," stop "gimping around," and
that Volzke was "taking heat" from Richard Williams, Vice
President of Operations about Plaintiff's use of crutches (Id.).
Plaintiff alleges Volzke told him several times when Williams was
on the floor so Plaintiff could hide the crutches (Id.).
Plaintiff argues that Defendant's claim that other employees
complained he was unable to perform the duties of his job is
supported only by inadmissible hearsay statements (Id.).
Plaintiff provides an affidavit of Andrew White, who worked in
Plaintiff's area as a parts inspector during Plaintiff's first
year of employment, and who observed Plaintiff's performance
(Id.).  White's affidavit indicates that Plaintiff could perform
all the required functions of his job, and further indicates that

17

when management learned of Plaintiff's need for additional surgery in July 2003, White heard Volzke, Williams, and another manager, Jim Lewis, comment that Plaintiff would not come back to work after his surgery (<u>Id</u>.). White understood these comments to mean management had already decided Plaintiff would not be allowed to return to work (<u>Id</u>.).

Plaintiff next argues he was denied the right to return to work after his July and December surgeries, at which time he made repeated requests to return, but was rebuffed with the statement that he had to be "one hundred percent" (<u>Id</u>.). Plaintiff argues this "one hundred percent" rule was new, as evidenced by the fact that he had previously been permitted to work from June 2002 to July 2003 without having been "one hundred percent," that is, having worked with a cane or a crutch (<u>Id</u>.). Plaintiff argues Volzke only assumed that his using a cane or crutch presented a safety issue, when Plaintiff had already done the job for a year with crutches, and Volzke knew of no incident where the crutch or cane caused a problem (<u>Id</u>.).

Plaintiff argues the significance of his application for long-term disability was that he had no choice but to apply because Volzke would not permit him to return to work (<u>Id</u>.). Plaintiff argues that it is simply not true that McCann was moved to Plaintiff's shift in order to assist Plaintiff (<u>Id</u>.).

18

Plaintiff proffers McCann's time records, which show McCann was not moved to Plaintiff's shift until Plaintiff left for his surgery in July 2003 (Id.).

Plaintiff testified that there was a position left open when McCann was assigned to Plaintiff's former job, which Plaintiff could have filled (Id.). Plaintiff's affidavit further indicates that after Plaintiff provided Defendant with a full release allowing him to return to work without restrictions, in March 2004, Cynthia Brusman, Defendant's human resources manager, called him to tell him there were no positions available and confirmed there were no positions for "crutches or canes" (Id.). Plaintiff disputes Defendant's assertion that Brusman informed him of other vacancies in the company (Id.).

Plaintiff further disputes Defendant's characterization that his impairment was not severe (Id.). Plaintiff states that during his time working for Defendant, he frequently experienced severe swelling and pain, that his pain ranged from a three to a seven on a scale of ten, that he had to take prescription painkillers, and that he often had to spend his lunchtime with ice on his knee (Id.). He also states he could not help with chores around the house that involved walking (Id.).

As a result of the knee infection that developed subsequent to his initial surgery, Plaintiff argues he suffered

19

permanent damage, bone loss that will never heal completely (Id.).    Plaintiff's deposition indicates he cannot walk for extended periods of time without a crutch or cane, that walking down a hill or grade is particularly problematic, and that he still requires a cane or crutch to walk, and probably always will (Id.).

Having presented his view of the record, Plaintiff then proceeds to argue that Defendant directs the Court to "the wrong timeframe, the wrong impairment, and the wrong major life activity," and uses overruled and misleading case law to claim that Plaintiff was not actually disabled (Id.).    Plaintiff argues Defendant misses the point by detailing his current condition and the fact that he was released without restrictions in March, 2004 (Id.).    Plaintiff argues under Koscis v. Multi-Care Management, Inc., 97 F.3d 876, 884 (6th Cir. 1996), that his burden is to establish he was a qualified individual with a disability at the time of the discriminatory act, not afterwards (Id.).    Plaintiff points to the statements made against him about "gimping around," the refusal to allow him to return to work, the new "one hundred percent" policy, and Brusman's alleged lies to him about job openings all show discrimination that occurred during his disability (Id).

Plaintiff argues his impairment is not merely a

20

prosthetic knee, as characterized by Defendant, but rather a failed knee replacement and the severe pain and crippling complications from multiple surgeries and infections (Id.). Plaintiff then attacks Defendant's position that his impairment was minor, citing his need to ice his knee during the day, his extreme pain and swelling, and that he had to use prescription narcotic pain killers (Id.).

Plaintiff argues his case is supported by Clark v. Whirlpool, 109 Fed. Appx. 750 (6th Cir. August 31, 2004), in which the Sixth Circuit found a genuine issue of material fact as to a plaintiff's disability based on her subjective complaints about pain (Id.). Plaintiff argues Defendant focuses on the wrong major life activities of working and lifting, when Plaintiff's disability was related to walking (Id.). Plaintiff argues he was well qualified to complete the required tasks of his job, but he only needed the accommodation of a cane or a crutch (Id.).

Plaintiff next argues that Defendant makes too much of his doctor's March 2004 medical release, when the doctor omitted to note that Plaintiff was still in need of a cane or a crutch, and when Plaintiff himself avers that this is the case (Id.). Plaintiff argues that the factual situation of his case distinguishes it from the authorities cited by Defendant in its

motion, none of which involve a serious long-term impairment
(Id.).  Plaintiff argues the plaintiff in Brown, 305 F.Supp. 2d
825-26, was restricted in walking only three weeks, the plaintiff
in Penny, 128 F.3d 408 (6th Cir. 1997) required no crutch or cane
to walk, the plaintiff in Martin, 2005 U.S. Dist. LEXIS 9013 *14
(attached as Exhibit H to Defendant's Memorandum) required no
cane or walker, and the plaintiff in Sutton, whose eyesight was
corrected with glasses cannot be equated to a person who must use
crutches to walk (Id.).

        As for Defendant's contention that Plaintiff does not
have a record of a disability, Plaintiff shows that his record
included among other things several notes from doctors and
orthopaedic surgeons, notes for time off in March 2003 and June
2003, a letter to Plaintiff from his surgeon about the July 2003
surgery, and a note from Plaintiff to Volzke dated August 5, 2003
stating Plaintiff could work but could not get around without
crutches (Id.).  Plaintiff signals that Dr. Welch's September 16,
2003 letter, also in the file, is especially significant in that
it outlines the history of his knee problems (Id.).   In the
light of all of this evidence, argues Plaintiff, it is
disingenuous to rely on the March 2003 release as evidence of a
lack of a disability in his record (Id. citing Lloyd v. East
Cleveland City School Dist., 232 F. Supp. 2d 806 (N.D. Ohio

22

2002)).

Plaintiff argues there is ample evidence in the record that Defendant regarded Plaintiff as disabled: including Volzke's alleged statements about Plaintiff "gimping around," and the sudden imposition of the "one hundred percent" rule (Id.). Citing the ADA's statutory language, Plaintiff argues he was a victim of stereotypic assumptions targeted by the law (Id. citing 42 U.S.C. § 12101 (Congress made the finding that individuals with disabilities faced with restrictions based on stereotypic assumptions)). Volzke, argues Plaintiff, jumped to the unsupported conclusion that Plaintiff would be unsafe in lifting and therefore would be unable to do any jobs in the company (Id.). Plaintiff argues Volzke was supported in such conclusion by Brusman, who did not tell Plaintiff about vacancies anywhere in the company (Id.).

Plaintiff next argues that many courts have found the imposition of a "one hundred percent healed" rule to be a per se violation of the ADA as applied to a disabled employee (Id. citing Henderson v. Ardco, Inc., 247 F.3d 645, 653 (6th Cir. 2001), McGregor v. National RR Passenger Corp., 187 F.3d 1113, 1116 (9th Cir. 1999)(collecting cases), Warmsley v. New York City Transit Authority, 308 F.Supp.2d 114, 122 (S.D.N.Y. 2004), Heise v. Genuine Parts Co., 900 F.Supp. 1137, 1154 n.10(D. Minn. 1995),

Hutchinson v. United Parcel Service, 883 F.Supp. 379, 397 (N.D. Iowa 1995), Norris v. Allied-Sysco Food Services, Inc., 948 F.Supp. 1418, 1437 (N.D. Cal. 1996)).    Other courts, too, indicates Plaintiff, have found that such a rule is evidence the employer regarded an impaired employee as disabled (Id. citing Johnson v. Paradise Valley Unified School Dist., 251 F.3d 1222, 1228 (9th Cir. 2001)).  In the face of all such authority, argues Plaintiff, Defendant cites to Maloney v. Barberton Citizens Hosp., 109 Ohio App.3d 372, 672 N.E.2d 223 (Ohio App. 1996), which Plaintiff argues simply is not on point (Id.).    In Plaintiff's view, Maloney is distinguishable because neither the plaintiff nor the employer in the case viewed her impairment as having any long-term effects (Id.).    In this case, argues Plaintiff, Defendant clearly saw his condition as more than minor, and this is why it imposed a "hundred percent" rule to bar Plaintiff from working (Id.).

        Plaintiff closes its response by arguing that Defendant's claim is ridiculous that he was never subjected to an adverse employment decision (Id.).  Plaintiff reiterates that there is more than sufficient evidence that he was denied employment solely because of disability, perceived or real (Id.). Plaintiff argues that there is evidence that Defendant refused to let him work solely because of his disability, and overwhelming

24

evidence that the decision was taken at least in part because of his disability (<u>Id</u>.). For these reasons, Plaintiff argues summary judgment should be denied (<u>Id</u>.).

### D. Defendant's Reply

Defendant argues Plaintiff's response is supported by an affidavit contradicting his prior testimony in an unrelated case (doc. 26). Defendant attempts to impeach Plaintiff's presentation of facts, arguing that it had no knowledge that he iced his knee during lunch hour (<u>Id</u>.). Defendant argues that under <u>Swanson v. University of Cincinnati</u>, 268 F.3d 307, 316 (6th Cir. 2001), the Court is not restricted to look at Plaintiff's condition up to the time of the discriminatory action, but may consider the fact that treatment corrected the condition in determining that the condition was temporary and not substantially limiting (<u>Id</u>.). Consequently, argues Defendant, Plaintiff's argument under <u>Kocsis</u>, 97 F.3d 876 (6th Cir. 1996), that the only relevant time-period in this case is during his employment with Defendant should be rejected (<u>Id</u>.). In Defendant's view, the facts of the case show that Plaintiff's condition "took a turn for the better" subsequent to his surgery, such that he does not have a substantially limiting condition and does not qualify as disabled within the meaning of the ADA (<u>Id</u>.).

Defendant next argues that Plaintiff has failed to prove he has a record of disability (<u>Id</u>.). Defendant argues that

Plaintiff's suggestion is inaccurate that its files are replete with documents indicating he had a substantially limiting impairment (Id.). Defendant argues that all such documents are either general in nature, emphasize the temporary nature of his condition, or simply fail to indicate he had a substantially limiting impairment (Id.). Citing Gutridge v. Clure et al., 153 F.3d 898, 901 (8th Cir. 1998), Defendant argues that five separate surgeries, medications, and work restrictions were not found to constitute record of impairment in that case, and as such, no record of impairment should be found in this case (Id.). Defendant further highlights that the Gutridge court quoted Taylor v. United States Postal Service, 946 F.2d 1214, 1217 (6th Cir. 1991), stating that "[s]uch an interpretation would establish the 'nonsensical proposition that any hospital stay is sufficient to evidence a "record of impairment."'" (Id.).

Defendant next argues that because in its view Plaintiff has failed to present "even a modicum of evidence" that Defendant perceived him to be disabled, the subjective question as to whether Defendant regarded him as disabled is proper for resolution on a motion for summary judgment (Id.). Defendant argues that Plaintiff has failed to meet his threshold burden of showing an impairment that substantially limits him in a major life activity, and that he has not submitted evidence showing Defendant believed he was restricted in his ability to perform

activities in his daily life (Id.).

Defendant argues Plaintiff's claim about a "hundred percent healed rule" simply is untrue (Id.). According to Defendant, the record shows it permits employees to return to work with or without restrictions (Id.). Defendant argues Plaintiff's own testimony shows that another employee was permitted to return to work even though he temporarily required the use of crutches (Id.).

Defendant argues Plaintiff's stated desire to return to work after two surgeries is of no consequence in the absence of a medical release (Id.). Defendant argues its policy is that after a medical leave, an employee seeking to return to work must provide a medical release (Id.). Consequently, argues Defendant, Plaintiff's claim that Volzke would not allow him to return to work is untrue, but rather his lack of a proffer of a medical release (Id.). Defendant argues Plaintiff did not proffer a release to work until March 19, 2004 (Id.). Thus, according to Defendant, Plaintiff's claim that it regarded him as disabled must fail (Id.).

Defendant reiterates its view that Volzke's concern was about safety, citing Robertson v. The Neuromedical Center, 161 F.3d 292, 296 (5ᵗʰ Cir. 1998), cert. denied, 526 U.S. 1098 (1999)(citing 42 U.S.C. § 12113(b))("The ADA does not require an employer to accommodate an individual if the employee would pose

a direct threat to the health and safety of others."). Defendant argues that Plaintiff's duties as parts specialist included carrying some aircraft parts in excess of seventy-five pounds (Id.). Should Plaintiff had faltered while carrying such items, Defendant reasons, he may have injured himself or others (Id.). Safety concerns, argues Defendant, are not evidence that Defendant viewed Plaintiff as disabled (Id. citing Green v. Rosemont Industries, Inc., 5 F. Supp.2d 568, 573 (S.D. Ohio 1998)("[A]n employer does not necessarily regard an employee as disabled simply by finding the employee as being incapable of satisfying the singular demands of a particular job")).

Defendant concludes its Reply by arguing that Plaintiff did not suffer any adverse employment action (Id.). Defendant argues it accommodated him from June 2002 to July 2003 by providing him with a stool and by otherwise not treating him differently than other parts specialists (Id.). From July 2003 to March 2004, Defendant argues Plaintiff's physician refused to allow Plaintiff to return to work, and Defendant in no way applied its policy requiring a release in a discriminatory manner (Id.). Defendant argues that record evidence belies Plaintiff's claims that as of March 2004 Brusman lied to him about available positions, that stock clerk positions vacated by others remained vacant, and that Brusman made any comment regarding no positions

for crutches or canes (Id.).[1]  Defendant argues such a comment
would be nonsensical since Brusman had received a full medical
release for Plaintiff and he admitted that he had not advised her
that he was still using a crutch or cane (Id.).  Finally,
Defendant again alludes to Plaintiff's deposition testimony in
another case, where Plaintiff testified that his reason for
leaving Defendant's employ was to have knee surgery and that he
attempted to return to work, but "there was no position
available" (Id.).  Defendant argues that had Plaintiff really
believed he was not reinstated for discriminatory reasons, he
would have so stated during that deposition (Id.).

## IV. Discussion

Having reviewed this matter, the Court finds too many
disputes of material fact to justify a grant of summary judgment
for Defendant.  Although both parties repeatedly attempt to call
into question the veracity of one another's testimony, clearly
such credibility determinations are in the province of a jury,
and not the Court.  Defendant completely fails to address
Plaintiff's sworn statements that Volzke told him that he needed

---

[1] Defendant requests the Court make an adverse inference
against Plaintiff with respect to Plaintiff's telephone
conversations with Brusman and Volzke because Plaintiff taped the
conversations but only produced partial recordings.  However,
Defendant proffers no authority for such proposition in the
context of Fed. R. Civ. P. 56, which requires that inferences be
made in the favor of the non-moving party.  Of course, a jury
could be presented with such information and draw its own
conclusions.

to stop "gimping around," that he was taking heat from Williams about the crutches, and that Volzke stated he would let Plaintiff know when Williams was on the work floor so Plaintiff could hide the crutches. A reasonable jury could certainly infer from such statements that Defendant harbored animus against employees with crutches. In light of the fact that Defendant allowed Plaintiff to work for over a year with a crutch or a cane, without incident, a reasonable jury might also find dubious Defendant's argument that Plaintiff's reliance on a crutch or cane presented a safety hazard.

The fundamental analysis, however, is whether Plaintiff has successfully raised at least a genuine issue of material fact as to the elements of an ADA claim. The first step is whether Plaintiff is disabled within the meaning of the ADA.

### A. A Jury Could Find Plaintiff Disabled Under the ADA

Plaintiff alleges here that he was substantially limited in his ability to walk, a major life activity. 29 C.F.R. 1630.2(i), Moore v. J.B. Hunt Transport, Inc., 221 F.3d 944, 951 (7th Cir. 2000). Although Defendant proffers facts in an attempt to show Plaintiff's knee problems were temporary and minor, a reasonable jury could find that Plaintiff's condition was serious and enduring. A jury could weigh the full release granted to Plaintiff in March 2004, which Defendant relies upon, against Plaintiff's own affidavit testimony, more than a year later, that

indicates as of late 2005 Plaintiff continued to need crutches or a cane and probably will for the rest of his life due to permanent bone loss. Should Defendants desire to contest Plaintiff's claims, they can proffer an expert, and cross examine both Plaintiff and his doctor at trial. The Court takes Plaintiff's view that the caselaw offered by Defendant is not necessarily applicable to the facts of this case. Taking all inferences in favor of Plaintiff, as the Court is required to do in the context of Defendant's motion for summary judgment, the Court finds his case can be viewed as one implicating a serious long-term medical condition, as opposed to a less enduring condition similar to those in the primary cases cited by Defendant. See Brown v. BKW Drywall Supply, Inc., 305 F. Supp 2d 814, 826 (S.D. Ohio 2004)(Plaintiff only disabled from walking for three weeks), Penny v. United Parcel Service, 128 F.3d 408, 415 (6th Cir. 1997)(Plaintiff limped on occasion but managed to go fishing, hunt rabbits, squirrels, pheasant, and deer), Johnson v. City of Mason, 101 F.Supp. 2d 566, 574 (S.D. Ohio 2000)(insufficient evidence that plaintiff's condition was severe or that its impact on walking would be permanently debilitating), Martin v. Licking County Common Pleas Court Juvenile Division, 2005 U.S. Dist. LEXIS 9013 *15-16 (S.D. Ohio April 25, 2005)(Plaintiff healed and did not require cane). The Court further finds well-taken Plaintiff's argument that Sutton v.

United Air Lines, Inc., 527 U.S. 471 (1999), in which plaintiff's eyesight was corrected with glasses, cannot be equated to this case, where plaintiff avers he must use crutches to walk.  The crutches do not "correct" the disability, but rather serve as evidence of it.

       For all of these reasons, the Court finds the Plaintiff has raised at least a genuine issue of material fact as to whether he has an impairment that substantially limits his ability to walk, both now and during the time of his employment with Defendant.  The parties also dispute whether Plaintiff qualifies as disabled for having a record of such an impairment or being regarded as having such an impairment.  Having reviewed the record, it appears to the Court that a reasonable jury could find Plaintiff had a record of an impairment, consistent with Plaintiff's cited authority, Lloyd v. East Cleveland City School Dist., 232 F.Supp.2d 806 (N.D. Ohio 2002)(record of doctor's notes showing three surgeries and periods of incapacitation following an automobile accident sufficient to deny summary judgment on "record of disability" claim, no need to show a record that the impairment would be long-term or permanent).  The Court does not find Defendant's authority, Gutridge v. Clure et al., 153 F.3d 898, 901 (8th Cir. 1998) persuasive, as it involved neither walking nor a long-term condition.  Regardless of the number of surgeries a person might receive, the question centers

32

on the outcome.  In <u>Gutridge</u>, the Plaintiff ultimately recovered in a matter of weeks and worked at a substantially identical job in another company.  153 F.3d 901.  In the case at hand, unfortunately, Plaintiff appears to have not made such a quick recovery, and his testimony indicates his condition is ongoing.

Here, Defendant's reference to language of the <u>Taylor</u> decision, 946 F.2d 1214, 1217 (6th Cir. 1991), is similarly off point.  Plaintiff makes no claim that a single hospitalization established a record of impairment, but rather claims that a surgery went awry, resulting in a long-term condition forcing him to rely on a crutch or cane.  Although when based only on documentary evidence, it is a close call, a reasonable jury could view the record before Defendant, including evidence of time off and a history of surgeries to counterbalance the March 2004 medical release, upon which Defendant places so much reliance.

Finally, the alleged remarks of Volzke that Plaintiff was "gimping around," and that Plaintiff needed to hide his crutches from Williams, satisfy the Court that a reasonable jury could find Plaintiff was regarded as disabled.  Plaintiff further makes a convincing argument that the imposition of a "one hundred percent healed" rule could be regarded as evidence Defendant regarded him as disabled, based on <u>Henderson v. Ardco, Inc.</u>, 247 F.3d 645, 653 (6th Cir. 2001).  Although a jury might weigh this against Plaintiff's apparent failure to proffer a medical release

prior to March 2004, taking all inferences in favor of Plaintiff, if Plaintiff was told about a "one hundred percent" requirement, obtaining a medical release would have been futile.  In any event, the question of whether a plaintiff is regarded as disabled involves a determination of state of mind that is more appropriate for a jury than a judge.  Ross v. Campbell Soup Co., 237 F. 3d 701, 709 (6th Cir. 2001).  For all of the above reasons, the Court concludes a jury could find Plaintiff disabled under the meaning of the ADA.

Defendant has not contested whether Plaintiff is otherwise qualified for his position, with or without accommodation for his disability.  Therefore, the Court turns next to the remaining issue in Defendant's motion for summary judgment: whether Plaintiff suffered an adverse employment decision as a result of his disability.

**B. A Jury Could Find Plaintiff Suffered An Adverse Employment Decision**

The Court finds that a reasonable jury could reject Defendant's arguments that Plaintiff did not suffer an adverse employment decision, should it accept Plaintiff's version of the facts.[2]  The parties clearly dispute whether Volzke and Brusman

---

[2] Although a jury could find Plaintiff's disability was the "sole reason" for the adverse employment decision, the Court is not convinced that a case like this, where Plaintiff proffers direct evidence in support of his "regarded-as-having an impairment" claim, that Plaintiff must show more than the employer relied upon the disability in making its decision.  See

"lied about the availability of jobs in the parts department and no one offered him any other options or invited him to check back." As mentioned above, such question is not subject to resolution on a summary judgment motion, because it requires the finder of fact to make a credibility determination. For this simple reason, the Court does not find well-taken Defendant's argument that it is entitled to summary judgment under the theory that Plaintiff suffered no adverse employment decision.

## V. Defendant's Motion to Strike Affidavit of Michael C. Welch

Defendant filed its Motion to Strike on December 29, 2005, arguing the Court should strike such affidavit from the record pursuant to Fed. R. Civ. P. 37(c) because Plaintiff produced it at the last minute outside of discovery deadlines (doc. 27). Defendant argues it is highly prejudiced by Plaintiff's production of such affidavit on the day before its Reply was due to Plaintiff's Opposition to its motion for summary judgment (Id.). Plaintiff responds that the contents of the affidavit were no surprise to Defendant, as Plaintiff disclosed as early as April 15, 2005, that Dr. Welch was expected to testify concerning the March 2004 medical release he issued on behalf of Plaintiff (doc. 28). Further, argues Plaintiff, in his own deposition, Plaintiff testified as to the exact same matter:

---

Todd v. City of Cincinnati, No. 05-3343, (6th Cir. February 3, 2006).

he stated Dr. Welch told him he would be using a walking device the rest of his life (Id.).   Plaintiff indicates he in no way failed to disclose the affidavit, as it simply did not exist until December 16, 2005, when he obtained it to authenticate Dr. Welch's November 18, 2005 letter of clarification about the March 2004 release (Id.).

Rule 37(c) provides as follows, in pertinent part, concerning failure to disclose:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

Fed. R. Civ. P. 37(c)(1).

The Court does not find it proper to grant Defendant's motion to strike because the Court did not rely on Dr. Welch's affidavit in coming to the conclusion that there are genuine issues of material fact in the case precluding summary judgment for Defendant.   Accordingly, Defendant was not prejudiced by the late filing of the affidavit.   The Court further finds extreme the proposition that such affidavit be barred from further use in this case, in light of the fact that Plaintiff had made a prior disclosure concerning the expected testimony, and had freely alluded to Dr. Welch's opinion in his own deposition.   It does not appear under the facts presented

that Plaintiff was acting in a bad faith dilatory manner.

Defendant further requests a continuance so as to depose Dr. Welch concerning his affidavit should its motion to strike be rejected.  The Court does not find such request well-taken, as the affidavit merely clarifies Dr. Welch's March 2004 release and the affidavit is clear on its face.  The Court does not consider that further delay in this case involving a potentially disabled plaintiff to comport with the interests of justice.

**VI.  Conclusion**

For the reasons indicated herein, the Court does not find Defendant's Motion for Summary Judgment or its Motion to Strike well-taken.  Accordingly, the Court DENIES Defendant Executive Jet Management, Inc.'s Motion for Summary Judgment Against Plaintiff Edward Wilson (doc. 16) and Defendant Executive Jet Management, Inc.'s Motion to Strike Affidavit of Michael C. Welch, M.D. (doc. 27).


        SO ORDERED.


Dated: February 28, 2006        /s/ S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge